FILED
2021 NOV 4 AM 11:25
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAMIE CUSTER,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case #4:20-cv-00106-PK<br><br>Magistrate Judge Paul Kohler |

  This matter comes before the Court on Plaintiff Jamie Custer's appeal of the Social Security Administration denial of her application for disability insurance benefits and supplemental security income. The Court held oral arguments on October 19, 2021. After consideration, the Court will affirm the administrative ruling.

I. STANDARD OF REVIEW

  This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to

---

  [1] Pursuant to Fed. R. Civ. P. 25(d) and the last sentence of 42 U.S.C. § 405(g), Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

  [2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

  [3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

consider all of the evidence, although they are not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.   PROCEDURAL HISTORY

In August 2017, Plaintiff filed an application for disability insurance benefits and supplemental security income, alleging disability beginning on May 1, 2011.[8] Plaintiff's claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on February 13, 2020.[10] The ALJ issued a decision on March 11, 2020, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on August 28, 2020,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

---

[4] *Id.* at 1009–10.

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 239–46.

[9] *Id.* at 63–64, 161–162.

[10] *Id.* at 40–62.

[11] *Id.* at 7–34.

[12] *Id.* at 1–6.

[13] 20 C.F.R. § 422.210(a).

On October 13, 2020, Plaintiff filed her complaint in this case.[14] On December 21, 2020, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[15] The Commissioner filed an answer and the administrative record on April 15, 2021.[16]

Plaintiff filed her Opening Brief on May 21, 2021.[17] The Commissioner's Answer Brief was filed on July 30, 2021.[18] Plaintiff filed her Reply Brief on August 19, 2021.[19]

B.   MEDICAL HISTORY

Plaintiff alleged disability based on bursitis, degenerative disc disease, arthritis, fibromyalgia, chronic migraines, bipolar disorder, schizophrenia, carpal tunnel, and degenerative joint disease of both knees.[20] Plaintiff has sought treatment for paranoia, hallucinations, psychosis, and depression, as well as physical ailments including low back pain, migraine headaches, and knee pain.[21]

---

[14] Docket No. 3.
[15] Docket No. 12.
[16] Docket Nos. 17–18.
[17] Docket No. 21.
[18] Docket No. 28.
[19] Docket No. 29.
[20] R. at 266.
[21] *Id.* at 412.

C. HEARING TESTIMONY

At the hearing before the ALJ, Plaintiff testified that she worked part-time but her employer made certain accommodations for her.[22] Plaintiff testified that she suffered from bipolar disorder, depression, anxiety, and schizophrenia.[23] To address her mental impairments, Plaintiff saw a therapist and took medication, though her medications caused side effects that made it difficult to concentrate and interact with others.[24] Plaintiff also stated she suffered from lower back pain, which made it difficult to stand or sit for long periods.[25] Plaintiff further stated that she suffered from migraines and fibromyalgia.[26] Her pain issues made it difficult to work full-time and to do other daily activities.[27]

At the hearing, the ALJ also heard from a vocational expert ("VE"). Relevant here, the ALJ posed a hypothetical question to the VE that included no limits on contact with a supervisor. In response, the VE identified three jobs the hypothetical individual could perform.

D. THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 15, 2015, the amended alleged onset date.[28] At step two, the ALJ found

---

[22] *Id.* at 47.
[23] *Id.* at 48–51.
[24] *Id.* at 49.
[25] *Id.* at 52.
[26] *Id.* at 53–55.
[27] *Id.* at 57–58.
[28] *Id.* at 13.

that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral knees, fibromyalgia, obesity, bipolar disorder, and schizophrenic disorder.[29] At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.[30] The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with certain modifications including a limitation to occasional contact with supervisors, co-workers, and the general public.[31] At step four, the ALJ determined that Plaintiff could not perform any of her past relevant work.[32] At step five, the ALJ found that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform and, therefore, she was not disabled.[33]

### III.  DISCUSSION

Plaintiff makes two arguments to support her claim that the ALJ erred at step five. First, Plaintiff argues that the hypothetical the ALJ posed to the VE did not include all limitations in the RFC assessment. Second, Plaintiff argues that the ALJ failed to consider the factors set out in *Trimiar v. Sullivan*[34] when determining whether jobs exist in the national economy in significant numbers.

---

[29] *Id.* at 13–15.
[30] *Id.* at 15–17.
[31] *Id.* at 17–25.
[32] *Id.* at 25.
[33] *Id.* at 25–27.
[34] 966 F.2d 1326 (10th Cir. 1992).

"On step five, after the claimant has established at step four that he or she cannot return to his or her past relevant work, the burden shifts to the Secretary to show that the claimant retains the residual functional capacity (RFC) to do other work that exists in the national economy."[35] Vocational expert testimony that the plaintiff is capable of performing one or more occupations that exist in significant numbers is sufficient to meet the Commissioner's burden at step five.[36] However, "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision."[37]

The parties agree that there is a discrepancy between the hypothetical the ALJ provided to the VE at the hearing and the RFC used by the ALJ in his opinion. At the hearing, the ALJ provided a hypothetical that included no limits on supervisory contact.[38] In response, the VE identified three positions such a hypothetical individual could perform: document preparer, bench assembler, and lens inserter. However, in his decision, the ALJ stated that Plaintiff would be limited to occasional contact with supervisors.[39] Despite this difference, the ALJ relied on the VE's testimony in finding that Plaintiff could perform these jobs.

---

[35] *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

[36] *See* 20 C.F.R. § 404.1566(e); *Ellison v. Sullivan*, 929 F.2d 534, 537 (10th Cir. 1990).

[37] *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990)).

[38] R. at 59.

[39] *Id.* at 17. "Occasional" contact with supervisors can be very little up to one-third of an eight-hour workday. *See* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (defining "occasionally" as occurring from very little up to one-third of the time).

Plaintiff argues that this discrepancy constitutes legal error requiring reversal. Defendant argues that any error was harmless. The Court may hold an ALJ's error harmless "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way."[40] "In conducting our review, we should, indeed must, exercise common sense."[41]

The Tenth Circuit addressed a similar scenario in *Lane v. Colvin*.[42] There, as here, the plaintiff argued that the ALJ failed to account for one of her limitations in determining her RFC.[43] In that case, there was medical opinion evidence that the plaintiff could "only accept supervision and interact with co-workers if the contact is not frequent or prolonged."[44] However, the ALJ did not include such a limitation in his RFC or hypothetical questions to the vocational expert.[45] The Tenth Circuit held that any error was harmless. In reaching this conclusion, the court examined the job (bottling-line attendant) that the vocational expert testified the plaintiff could perform. Reviewing the Dictionary of Occupational Titles ("DOT"), the court noted that taking instruction or helping was not significant and the activity of talking was not present.[46] "Thus, the job of bottling attendant does not involve frequent or prolonged

---

[40] *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

[41] *Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

[42] 643 F. App'x 766 (10th Cir. 2016).

[43] *Id.* at 767.

[44] *Id.* at 768.

[45] *Id.*

[46] *Id.* at 770.

interaction with supervisors or co-workers."[47] Based upon this, the court found that there was "no actual conflict between a limitation on frequent and prolonged interaction with supervisors and co-workers and the bottling-line attendant job identified by the VE's testimony," so "any oversight by the ALJ in including this limitation is harmless error."[48]

The reasoning in *Lane* is persuasive and the same result is warranted here. The VE and the ALJ identified the following jobs: document preparer, bench assembler, and lens inserter.[49] Like the job at issue in *Lane*, the DOT provides that the jobs of document preparer,[50] bench assembler,[51] and lens inserter,[52] have "not significant" taking instructions or helping and the activity of talking is not present. Similarly, all of these jobs are rated as having the lowest possible level of human interaction.[53] Thus, these jobs are consistent with having only occasional contact with supervisors. Further, at the hearing, the VE testified that all of the jobs identified would have no public contact and would have minimal or superficial coworker contact.[54] This testimony is consistent with the DOT and provides further support for the ALJ's

---

[47] *Id.*

[48] *Id.*

[49] R. at 26.

[50] DOT No. 249.587-018, 1991 WL 672349.

[51] DOT No. 739.687-182, 1991 WL 680217.

[52] DOT No. 713.687-026, 1991 WL 679273.

[53] *See Lane*, 643 F. App'x at 770 n.1 ("The DOT rates the amount of interaction with people on a scale of 0–8, with 8 representing the lowest possible level of human interaction that exists in the labor force.").

[54] R. at 60.

decision.[55]  Thus, any discrepancy between the hypothetical given to the VE and the RFC in the ALJ's decision does not warrant remand

Plaintiff next argues that the ALJ erred in failing to consider the factors set out in *Trimiar v. Sullivan* before determining that there were a significant number of jobs in the national economy that she could perform.  In *Trimiar*, the Tenth Circuit was tasked with deciding the number of jobs necessary to constitute a "significant number."[56]  At issue in that case was whether between 650 and 900 jobs in a specific region constituted a significant number.[57]  The court declined to adopt a bright-line test but provided several factors that an ALJ should consider, including "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on."[58]

The Tenth Circuit has since noted that *Trimiar* was only focused on jobs in the regional economy because the VE in that case only testified as to the number of jobs in the regional economy.[59]  The Tenth Circuit has clarified "that the proper focus generally must be on jobs in the national, not regional, economy."[60]  Further, the Tenth Circuit has stated that an ALJ need not engage in the analysis set out in *Trimiar* when the number of relevant jobs is much larger

---

[55] *See Lane*, 643 F. App'x at 770 n.1.

[56] *Trimiar*, 966 F.2d at 1330.

[57] *Id.*

[58] *Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).

[59] *Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009).

[60] *Id.* at 1274.

9

than the number of jobs presented in that case.[61] In a recent unpublished decision, the Tenth Circuit found that 20,500 to 22,000 jobs was numerically significant and the ALJ did not err by not considering all of the *Trimiar* factors.[62]

Plaintiff does not contend that the number of jobs identified by the ALJ—42,500 jobs in the national economy—is not sufficient to be considered significant.[63] Instead, she argues that the ALJ needed to conduct a more in-depth analysis of the *Trimiar* factors before concluding that there was a significant number of jobs she could perform. The Commissioner, on the other hand, asserts that the ALJ was not required to consider the *Trimiar* factors at all in light of more recent decisions in the Tenth Circuit. The Court tends to agree with the Commissioner that consideration of the *Trimiar* factors was unnecessary in this case given the Tenth Circuit's decisions in *Raymond* and *Garcia*. However, the Court need not conclusively decide the issue because, as will be discussed, the record reflects that the ALJ considered the *Trimiar* factors and any deficiency in the ALJ's analysis was harmless.

Despite Plaintiff's argument to the contrary, *Trimiar* makes clear that the ALJ need not explicitly discuss each factor. Instead, the Court reviews "the transcript of the hearing and the decision of the ALJ" to determine whether "the ALJ gave proper consideration to these factors."[64] In conducting this review, the Court concludes that the ALJ did consider the factors

---

[61] *Id.* at 1274 n.2.

[62] *Garcia v. Comm'r, SSA*, 817 F. App'x 640, 648–50 (10th Cir. 2020).

[63] Docket No. 21, at 10 ("Ms. Custer is not arguing that as a matter of law this number of jobs cannot be considered significant.").

[64] *Trimiar*, 966 F.2d at 1330; *see also Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (noting the factors identified in *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988), which served as the basis for the *Trimiar* factors, "[a]re suggestions only—the ALJ need not explicitly consider each factor"); *Deanda v. Colvin*, No. 1:12-CV-0041-EJF, 2014 WL 971696, at *11 (D.

relevant here. The ALJ considered and addressed the nature of Plaintiff's disability,[65] the reliability of the VE,[66] and the types and availability of work Plaintiff could perform.[67] There is little evidence on the remaining factors for the ALJ to have considered. Based upon this, the Court concludes that the ALJ's consideration of the *Trimiar* factors—to the extent any such consideration was necessary—was sufficient.[68]

Finally, any error in the ALJ's consideration of the *Trimiar* factors was harmless.[69] As stated, the ALJ found that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. The question then is whether the ALJ's finding is supported by substantial evidence. The Tenth Circuit has noted that "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation"[70] and "should ultimately be left to the [ALJ's] common sense in weighing the statutory language as

---

Utah Mar. 12, 2014) ("The analysis in *Trimiar* makes plain that an ALJ need not explicitly discuss those factors—rather, the record must reflect that these factors entered into the ALJ's calculus in determining whether jobs existed in significant numbers.").

[65] R. at 13–17.

[66] *Id.* at 26–27.

[67] *Id.* at 17–25.

[68] *See Garcia*, 817 F. App'x at 649 (rejecting an argument that the ALJ erred in failing to "consider two *Trimiar* factors—'the distance Garcia would have to travel' and 'the isolated nature of the jobs'"); *see also Marsha K. v. Saul*, No. 2:17-CV-00453-RJS-CMR, 2019 WL 4578217, at *7 (D. Utah Sept. 4, 2019) (finding an ALJ satisfied *Trimiar* where the "the ALJ's decision reveals that he considered the level of Plaintiff's disability, the reliability of the VE's testimony, and the types and availability of such work").

[69] *Allen*, 357 F.3d at 1145 (recognizing that harmless error may apply when the ALJ fails to consider the *Trimiar* factors)

[70] *Id.* at 1144.

applied to a particular claimant's factual situation."[71]  Further, a reviewing court does "not presume to interpose our judgment for that of the ALJ."[72]

The Tenth Circuit has recently found that 22,500 to 22,000 jobs—a number far below the number of jobs present here—was sufficient to support a finding of numerical significance.[73] Here, the VE identified three jobs totaling 42,500 positions in the national economy that Plaintiff could perform.  Based upon his evaluation of the evidence, including the testimony from the VE, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy.  That conclusion is supported by substantial evidence and the Court declines to substitute its judgment for that of the ALJ.

## IV.  CONCLUSION

Accordingly, the Court hereby AFFIRMS the decision below.

DATED:  04  November 2021.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

---

[71] *Trimiar*, 966 F.2d at 1330 (internal quotation marks omitted) (alteration in original).
[72] *Id.* at 1332.
[73] *Garcia*, 817 F. App'x at 649–50 ("Garcia has not established that 20,500 to 22,000 jobs is a "very limited number[ ]" under 20 C.F.R. § 404.1566(b).").